UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDDIE K. TAYLOR,

        Plaintiff,

v.                                      Case No:  8:12-cv-2448-T-AEP

GEICO INDEMNITY COMPANY,

        Defendant.

_____/

## ORDER & MEMORANDUM

This cause is before the Court on the Defendant GEICO Indemnity Company's Motion for Final Summary Judgment and Incorporated Memorandum of Law ("Def.'s Mot."), Dkt. No. 59, and Plaintiff's response in opposition thereto ("Pl.'s Resp."), Dkt. No. 63.  For the reasons that follow, Defendant's motion (Dkt. No. 59) is DENIED.

### I.  Background

This action arises from a complaint filed by Plaintiff Eddie K. Taylor ("Taylor"), against Defendant GEICO Indemnity Company ("GEICO"), alleging bath faith in handling claims brought by Ronald and Hsui Donnerstag (collectively, "the Donnerstags").  Am. Compl., Dkt. No. 2. GEICO moved for summary judgment on September 8, 2014.  Def.'s Mot., Dkt. No. 59.  Taylor filed a response on September 29, 2014, Pl.'s Resp., Dkt. No. 63.  Both parties filed supplemental exhibits.  Notice, Dkt. No. 60; Notice, Dkt. No. 64.  On January 14, 2015, a motion hearing was held, where the undersigned reserved judgment on GEICO's motion.  Minute Entry, Dkt. No. 69.

### II.  Facts

On April 30, 2009, Taylor and Ronald Donnerstag ("Mr. Donnerstag") were involved in an automobile accident.  Pl.'s Resp., Ex. A, Dkt. No. 63.  Taylor was insured by GEICO, with a policy

that afforded bodily injury coverage of $10,000.00 per person/$20,000.00 per occurrence and property damage coverage in the amount of $10,000.00. Am. Compl., Dkt. No. 2. Mr. Donnerstag was insured by Allstate Insurance Company ("Allstate").

On May 1, 2009, Taylor informed GEICO of the accident. Def.'s Mot., Ex. B, Dkt. No. 59-2. According to GEICO records, Taylor was 90% at fault for the accident. Def.'s Mot., Ex. F, Dkt. No. 63-6. On May 11, 2009, GEICO employee Nick Denton ("Denton") was informed through Allstate that Mr. Donnerstag's wife had reported Mr. Donnerstag to be suffering from a fractured hip, wrist, and lower leg, and also conveyed that the Donnerstags had retained counsel. Def.'s Mot., Ex. G, Dk.t No. 59-7. Allstate also informed GEICO that it was handling the property damage claim, and would seek subrogation from GEICO. Def.'s Mot., Ex. G, Dkt. No. 59-7. On that same day, GEICO employee Jerry Dunning ("Dunning") took over the subject claim and Taylor was sent a letter advising him of possible exposure to liability for damages exceeding his coverage. Pl.'s Resp., Ex. G, Dkt. No. 63-7. GEICO's letter to Taylor did not detail any specific information regarding Mr. Donnerstag's injuries, and Dunning later testified that as of May 12, 2009, it was clear Taylor was exposed to liability beyond his coverage. Pl.'s Resp., Ex. G, Ex. E at 92-93, Dkt. Nos. 63-7, 63-5. Several days later, on May 19, 2009, GEICO contacted Taylor and advised him that GEICO was investigating the loss and the full status of the claim. Def.'s Mot., Ex. I, Dkt. No. 59-9.

On or about June 8, 2009, GEICO received a handwritten demand letter from the Donnerstags requesting that GEICO send "all insurance money [it] can," including a demand for additional monies for property damage and other related expenses not being covered by Allstate. Def.'s Mot., Ex. J., Dkt. No. 59-10. Upon receipt, GEICO reached out to the purported attorney

of the Donnerstags, and also made attempts to contact Allstate regarding the subject claim.  Def.'s Mot 5-6, Dkt. No. 59.

On June 16, 2009, GEICO was notified of unpaid medical bills sent to Allstate totaling $140,981.78, Def.'s Mot., Ex. M, Dkt. No. 50-13, and on the following day Dunning sent a letter to the Donnerstags (copying Taylor) detailing Taylor's coverage, enclosing a release agreement in addition to a check for $10,000.000 representing Taylor's bodily injury limit.  Def.'s Mot., Ex. N, Dkt. No. 59-14.  GEICO also responded to the Donnerstags' demand letter, informing them of GEICO's understanding that they were going through Allstate, and enclosing small reimbursements for certain property damage.  Def.'s Mot., Ex. O, Dkt. No. 59-15.

On July 10, 2009, GEICO received two checks (bodily injury and small property damage reimbursements) which had been returned from the post office, and, after alerting the Donnerstags, GEICO reissued the checks.  Def.'s Mot. Exs. P, Q, Dkt. Nos. 59-16, 59-17.  After a series of communications between Allstate, the Donnerstags, and GEICO, which resulted in the Donnerstags receiving a property damage check in the amount of $5,063.80 from Allstate and a $500 deductible advance from GEICO, Def.'s Mot. 8, Dkt. No 59, the Donnerstags sent an August 11, 2009 letter to Dunning at GEICO, which reads:

> My motorcycle was worth $7,000. Allstate has only agreed to pay me $5,063.80, you have sent a check for $500. Can you pay the other $1,436.20? My wife and I will sign any paperwork you need. We want to finish this settlement in the next ten days.

Def.'s Mot., Ex. V, Dkt. No. 59-22.  On August 18, 2009, Dunning responded, reminding the Donnerstags of their choice to go through Allstate and explaining that the value of the motorcycle is all that could be paid.  Def.'s Mot., Ex. W, Dkt. No. 59-23.  Approximately one week later, the Donnerstags cashed the property damage check from Allstate, *see* Def.'s Mot., Ex. U, Dkt. No. 59-21, and, on August 27, 2009 GEICO received the previously issued checks enclosed with a

note from the Donnerstags stating in part: "sorry an agreement could not be reached."  Def.'s Mot.,

Ex. X, Dkt. No 59-24.  On August 28, 2009, Dunning was informed that the Donnerstags had filed

a lawsuit against Taylor.  Def.'s Mot., Ex. Y, Dkt. No. 59-25.

On September 1, 2009, Dunning received a copy of the complaint and attempted to contact

Taylor, reaching Taylor's wife.  A GEICO claims note entry by Dunning indicates he advised Mrs.

Taylor that a lawsuit had been filed.  Pl.'s Resp., Ex. C., Dkt. No 63-3.  A subsequent September

4, 2009 entry by Dunning's supervisor Jason Smith instructs Dunning to again attempt to contact

the Donnerstag's attorney in order to resolve the bodily injury and property damage claim.  Pl.'s

Resp., Ex. C., Dkt. No 63-3.  On September 8, 2009, Taylor contacted GEICO.  The corresponding

claim entry reads:

> Insured Called We Discussed The Case. Advised Clmt Not Accepting Our Money.
> I Advised We Had Tendered The $10k Bi and Fronted This $500 Ded, Since He
> Went Through His Carrier, And Additional $241 He Claimed For Fuel, Helmet,
> Jacket, Shirt And Pants. However, He Wanted More For His Motorcycle. He Said
> His Cycle Was Worth $7k, And Allstate Paid Him $5063.80 And We Fronted His
> Ded, But He Wanted The Additional $1436.20 I Responded Advising We Only Pay
> The Value Of The Motorcycle And Asked If He Had Provided Proof Of The Higher
> Amount To His Carrier, And Advised Since He Chose To Go Though His Carrier,
> We Will Pay Them Once They Settle With Him. Insured U/s. Advised Def Counsel
> Will Be In Touch With Him Shortly.

Def.'s Mot. Ex. AA, Dkt. No. 59-27.

GEICO subsequently sent Taylor the lawsuit paperwork, as well as contact information for

GEICO's provided defense attorney.  Def.'s Mot 11, Dkt. No. 59 (citing various correspondence).

The ensuing claim by Mr. Donnerstag against Taylor resulted in a judgment of $919,220.33 for

Mr. Donnerstag.  Def.'s Mot. 11, Dkt. No. 59 (citing *Donnerstag v. Taylor*, No. 09-4376-CA).

### III.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a);

*see also Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008).  In considering a summary judgment motion, the Court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Thus, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*; *see also Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1280 (11th Cir. 2004) ("All reasonable doubts about the facts should be resolved in favor of the non-movant." (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999))).  Moreover, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

"The party moving for summary judgment 'bears the initial responsibility of informing the district court of the basis for its motion.'" *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314–15 (11th Cir. 2011) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.  Additionally, summary judgment is particularly appropriate where the parties present only questions of law on an issue and no disputed facts. *See Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011).

If, after having reviewed the record through the prism of Federal Rule of Civil Procedure 56, "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment ought be granted. *Jackson*, 372 F.3d at 1280 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

## IV.   Analysis

### a.  Florida Bad Faith Insurance Law

In this diversity action, the Court applies Florida law to Taylor's bad faith claims.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Where the highest court—in this case, the Florida Supreme Court—has spoken on a topic, this Court must follow its rule, turning to intermediate state courts in the absence of its guidance unless persuasive evidence exists that the Supreme Court would rule otherwise.  *See, e.g.*, *Molinos Valle Del Cibao, C. por A. v. Lama,* 633 F.3d 1330, 1348 (11th Cir. 2011); *Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2009)(quoting *King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 157-158 (1948)).

Under Florida law, an insurer has a duty when handling claims against its insured to "use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Macola v. Gov't Emps. Ins. Co.*, 953 So.2d 451, 454–55 (Fla.2006) (quoting *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla.1980)).  The Florida Supreme Court has made clear that this duty extends to the defense of claims against the insured, which must be handled with the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business when the insured has surrendered to the insurer all control over the claim's handling.  *Gutierrez*, 386 So. 2d at 785; *Merrett v. Liberty Mut. Ins. Co.,* No. 3:10-CV-1195-J-12MCR, 2013 WL 1245860, at *2 (M.D. Fla. Mar. 27, 2013) *reconsideration denied,* No. 3:10-CV-1195-J-12MCR, 2013 WL 5289095 (M.D. Fla. Sept. 19, 2013).  The insurer has a corresponding obligation to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid

same. *Gutierrez*, 386 So. 2d at 785.  Additionally, the insurer "must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Id*.

Florida law is, however, clear that bad faith does not equate to negligence.  *Campbell v. Gov't Employees Ins. Co.*, 306 So. 2d 525, 530 (Fla. 1974).  While negligence is relevant to any bad faith determination, *Gutierrez*, 386 So. 2d at 785, "an insurer who is only negligent in its handling of an insured's claim, without more facts, does not rise to the bad faith standard and as a result cannot be held liable for an excess judgment*." Losat v. Geico Cas. Co.*, No. 8:10-CV-1564-T-17, 2011 WL 5834689, at *9 (M.D. Fla. Nov. 21, 2011).  "Thus, insurers have a positive duty to handle claims in a way that protects the interests of their insured, but they are not required to handle them perfectly, nor must they act without having had sufficient time to process and investigate a claim." *Novoa v. GEICO Indem. Co.*, No. 12–80223–CV–HURLEY/HOPKINS, 2013 WL 172913, at *4 (S.D. Fla. Jan. 16, 2013).

In determining whether an insurance company acted in bad faith, courts apply a "totality-of-the-circumstances" standard.  *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004); *State Farm Mut. Auto. Ins. Co. v. LaForet*, 658 So.2d 55, 62–63 (Fla. 1995).  A court considers the following factors in weighing the totality of the circumstances in a bad faith claim based on an insurer's denial to a coverage dispute: (1) whether the insurer was able to obtain a reservation of the right to deny coverage if a defense was provided; (2) efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insured; (3) the substance of the coverage dispute or the weight of legal authority on the coverage issue; (4) the insurer's diligence and thoroughness in investigating the facts specifically pertinent

to coverage; and (5) efforts made by the insurer to settle the liability claim in the face of the coverage dispute.  *Berges*, 896 So. 2d at 680; *LaForet*, 658 So.2d at 62–63.

Finally, while the facts of a case on occasion allow a Court to rule on a bad faith claim as matter of law at the summary judgment stage, *see Noonan v. Vermont Mut. Ins. Co.*, 761 F. Supp. 2d 1330, 1335 (M.D. Fla. 2010) ("Florida courts have resolved bad faith claims on the pleadings where the undisputed facts would allow no reasonable jury to conclude the defendant acted in bad faith"); *see also Jackson*, 372 F.3d at 1280 (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 587), the Florida Supreme Court has held that under Florida law "bad faith is ordinarily a question for the jury." *Berges*, 896 So.2d at 681; *Easley v. State Farm Mut. Auto. Ins. Co.*, 528 F.2d 558, 559 (5th Cir. 1976) ("Whether the insurer has acted in bad faith in refusing to settle a claim is a question of fact for the jury.").

### b.  Bad Faith

GEICO moves for summary judgment as matter of law, contending GEICO fulfilled its duty to Taylor in handling the subject claim and that no reasonable jury could conclude otherwise. Def.'s Mot. 2, 18-23, Dkt. No. 59.  Upon review of the whole record and given the presumptions this Court is required to posit, however, a rational trier of fact could find for Taylor.

Although GEICO asserts it fulfilled its duty to warn Taylor, Def.'s Mot. 18, Dkt. No 59, material questions of fact exist on record that, if construed in the light most favorable to Taylor, go directly to GEICO's diligence, care, and duty to inform Taylor of settlement opportunities.  *See*, *e.g*., *Gutierrez*, 386 So. 2d at 785.  For example, the Donnerstags and GEICO present conflicting accounts as to whether the Donnerstags sent a letter requesting additional monies on July 9, 2009. Pl.'s Resp., Exs. E, J, Dkt. Nos. 63-5, 63-10.  Also in dispute is whether Taylor was notified, and if so made fully aware, of the contents of the Donnerstags' August 11, 2009 letter requesting

additional reimbursement for property damage and expressing a desire to "finish this settlement in the next ten days."  Pl.'s Resp., Ex. R, Dkt. No. 63-18.  Taylor's deposition testimony states he was never advised of the letter and never received a copy.  Pl.'s Resp., Ex. B at 58, Dkt. No 63-2.  Moreover, a GEICO entry on September 8, 2009, nearly a month after the letter was sent and more than one week after a lawsuit was filed by the Donnerstags, notes Taylor being informed of the Donnerstags monetary requests and GEICO's response, but makes no mention of the Donnerstags settlement language or their desired timetable.  Def.'s Mot., Ex. AA, Dkt. No. 59-27.  Finally, similar doubt exists regarding Dunning's August 18, 2009 letter to the Donnerstags, which reiterates some of the issues raised in the Donnerstags August 11, 2009 letter and reminds the Donnerstags of their decision to go through their insurance carrier.  Def.'s Mot., Ex. W, Dkt. No. 59-23.  The letter does not copy Taylor, Def.'s Mot., Ex. W, Dkt. No. 59-23, and Taylor testified he was never advised of the letter and never received a copy.  Pl.'s Resp., Ex. B at 58, Dkt. No 63-2.

In fact, Taylor asserts he never received any letters from GEICO, was not timely informed of the Donnerstags' demands and possible willingness to settle nor of his option to contribute to any such settlement, and was not aware of the magnitude of excess bodily injury damages, Pl.'s Resp., Ex. B at 55-59, Dkt. No 63-2, all of which are non-moving party assertions that, on this record, must be credited for the purposes of GEICO's motion.  The foregoing ambiguities, when taken together, raise a factual dispute that directly and materially relates to the totality standard governing this claim; including efforts or measures taken by GEICO to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to Taylor, GEICO's diligence and thoroughness in investigating the facts specifically pertinent to coverage, GEICO's duty to advise Taylor of settlement opportunities and warn Taylor of the possibility of excess judgment,

and GEICO's efforts to settle the liability claim in the face of a coverage dispute. *Berges*, 896 So. 2d at 680; *LaForet*, 658 So.2d at 62–63; *Gutierrez*, 386 So. 2d at 785; *Powell v. Prudential Prop. & Cas. Ins. Co*., 584 So.2d 12, 14 (Fla. 3d DCA 1991); *Odom v. Canal Ins. Co.*, 582 So.2d 1203 (Fla. 1st DCA 1991) (ruling summary judgment in favor of the insurer was improper due to question of fact as to whether the insurer properly advised the insured).

The record also engenders additional material questions of fact, such as whether a reasonable opportunity to settle existed at all, and, if so, the extent to which GEICO was aware of it.  The Donnerstags letters to GEICO are far from clear, but could reasonably support Taylor's position. First, resolving any perceived bias in favor of Tayor, Mr. Donnerstag testified to an unequivocal wiliness to have settled the entire case had the demands outlined in his July 9, 2009 letter been met.  *See Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *Jackson*, 372 F.3d at 1280 ("All reasonable doubts about the facts should be resolved in favor of the non-movant.") (quotations and citations omitted); Pl.'s Resp., Ex. H at 65, Dkt. No. 63-8.  Moreover, the Donnerstag's August 11, 2009 letter appears to offer final settlement of all claims, including an offer to "sign any paperwork" needed, contingent on an additional $1,436.20 being paid toward the Donnerstag's motorcycle. *See* Def.'s Mot. Ex. V, Dkt. No. 59-22.  Indeed, the Donnerstag's August 27, 2009 reply to GEICO's response, which states they are "sorry an agreement could not be reached" and returns checks sent to them, further buttresses this point.  *See* Def.'s Mot., Ex. X, Dkt. No. 59-24.  The vague but plausible implied connection between the Donnerstags' request for outstanding property damage payment and their right to claim any excess bodily injury damages was not lost on GEICO, as evidenced by GEICO Regional Claims Manager Mark Sugden's June 29, 2009 claims entry, which reads: "Concern [sic] Is That Clmt May Ties [sic] Apd Into The Bi Settlemetn [sic]. We

Won't, But Their Letter for Apd Seems Unusual; In What Was Asked For." Pl.'s Resp., Ex. C, Dkt. No. 63-3.

GEICO maintains it attempted to settle the subject claim and had no awareness of any realistic opportunity Taylor may have had to eliminate his exposure to excess damages. Def.'s Mot. 20-23, Dkt. No. 59. GEICO's assertions notwithstanding, the facts of record, when drawn in the light most favorable to Taylor, could support the conclusion that GEICO was acutely aware of a realistic possibility for Taylor to avoid excess liability and ultimately failed to alert Taylor of this possibility. A conclusion of this sort would speak to a failure by GEICO in its affirmative duty to initiate settlement negotiations in the same manner as if it were acting on its own behalf, *see Powell*, 584 So. 2d at 14 ("Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations."), and would contribute significant weight as applied to the totality-of-the-circumstances standard governing Tylor's claims. Accordingly sufficient evidence of bad faith exists to take the case to the jury. *See Campbell*, 306 So.2d at 530-531 ("[R]easonable diligence and ordinary care [are] material in determining bad faith. Traditionally, reasonable diligence and ordinary care are considerations of fact – not of law."); *see also Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285–86 (11th Cir. 2001) (noting that the Supreme Court has held that "'even in the absence of a factual dispute, a district court has the power to 'deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.'"") (quoting *8 Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994) (quoting *Liberty Lobby*, 447 U.S. at 255)).

### c. Causation

GEICO also contends that summary judgment is warranted because the outstanding bodily injury judgment against Taylor is not causally related to GEICO's correspondence with the

Donnerstags. Def.'s Mot. 22, Dkt. No. 59. Conversely, Taylor proposes that causation is not an issue in a bad faith case where the court is set to determine damages. Pl.'s Resp. 18-19, Dkt. No. 63.

Turning first to Taylor's position that causation is immaterial: Taylor cites Florida Standard Jury Instruction 404.6(a)'s "Notes on Use" for the proposition that causation need not be proven. Taylor submits that the Court will determine damages in this case, and, therefore, Florida law obviates the need for a finding of causation. According to Taylor, this follows from the "Notes on Use" dictating that a legal cause instruction not be given where the Court determines damages. Taylor's argument, however, both presumes this Court's approach to the determination of damages and at the same time appears to conflict with Florida jurisprudence. In addition to a determination of bath faith, recovery under Florida bad faith insurance law requires proof of causation. That is, a prerequisite to a valid bad faith claim is "a causal connection between the damages claimed and the insurer's bad faith." *See Westchester Fire Ins. Co. v. Mid-Continent Cas. Co.*, 569 F. App'x 753, 756 (11th Cir. 2014) (quoting *Perera v. U.S. Fid. & Guar. Co.*, 35 So.3d 893, 903–04 (Fla. 2010)).

Turning finally to GEICO's contention that there is no causal relationship between the Donnerstags communications and the damages at issue in this case: As detailed above, sufficient doubt exists in the record to send such a determination to the jury. Drawing all inferences in favor of Taylor, the Donnerstags can reasonably be said to have intended to settle the entire case— including any remaining bodily injury claims—in July-August 2009 for the additional sum requested. The Donnerstags have testified as such. Whether such testimony is credible is, once again, a question best suited for the trier of fact. *See Liberty Lobby*, 477 U.S. at 255 ("Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

### V.    Conclusion

In light of the foregoing, GEICO's motion (Dkt. No. 59) is DENIED.


**DONE AND ORDERED** in Tampa, Florida, this 6th day of February, 2015.


ANTHONY E. PORCELLI
United States Magistrate Judge


cc: Counsel of Record