UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EDDIE K. TAYLOR,**

Plaintiff,

vs.                                              CASE NO.: **8:12-cv-2448-AEP**

**GEICO INDEMNITY COMPANY,**

Defendant.

## PLAINTIFF's PRETRIAL STATEMENT

Pursuant to Local Rule 3.06, Plaintiff, by and through his undersigned counsel, submits the following Pretrial Statement:

1. **Basis of Federal Jurisdiction:**

   The Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332 because this is an action in which EDDIE K. TAYLOR (hereinafter "TAYLOR") claims damages in excess of $75,000.00, exclusive of interest, attorneys' fees, and costs, and is between citizens of different states.

2. **Concise Statement of the Nature of the Action:**

   This is an action brought by TAYLOR against GEICO INDEMNITY COMPANY ("GEICO"), alleging that GEICO breached its duty of good faith to the Plaintiff in its handling of the claims of RONALD DONNERSTAG and HSIU DONNERSTAG, his wife (hereinafter "DONNERSTAG") against TAYLOR arising from a motor vehicle accident. The insurance policy issued to TAYLOR by GEICO, in effect at the time of the accident, provided Bodily Injury Liability coverage in the amount of $10,000.00 per person, and Property Damage coverage in the amount of $10,000.00 per person.

3. **Brief General Statement of Each Party's Case:**

   **a. Plaintiff:**
   On April 30, 2009, TAYLOR was involved in an automobile accident when he made a left turn in front of a motorcycle being operated by DONNERSTAG.   No

alcohol or drugs were involved by any party.   At the time of the accident, TAYLOR thought he had a green left arrow, but he was mistaken. DONNERSTAG, in fact, did have the right-of-way.   At the time of the accident, TAYLOR was insured under an automobile liability insurance policy issued by GEICO with bodily injury liability limits of $10,000 per person and $20,000 per accident.   The GEICO policy issued to TAYLOR also provided property damage liability limits in the amount of $10,000.

The accident was reported by TAYLOR to GEICO on the following day, May 1, 2009.   Within ten days, GEICO had confirmed that it provided bodily injury and property damage liability coverage for the accident, TAYLOR would most likely be held 90% at fault in the accident, and the bodily injury damages would greatly exceed GEICO's liability coverage.

On June 3, 2009, Mr. Donnerstag dictated to his wife a letter to GEICO requesting all insurance money available and other elements of property damages.

On July 6, 2009, DONNERSTAG called Adjuster Dunning inquiring about the status of his claim.   DONNERSTAG told Adjuster Dunning that he had not heard from GEICO in response to his June 3, 2009 letter.   At the time of that conversation, Adjuster Dunning knew that the Regional Claims Manager was concerned about whether DONNERSTAG's offer tied the property damage claim to the bodily injury claim.   Notwithstanding, Adjuster Dunning never asked DONNERSTAG whether he was conditioning the settlement of the BI claim with the settlement of the property damage claim.   Adjuster Dunning failed to advise TAYLOR about his conversation with DONNERSTAG.

After the July 6, 2009 telephone conference between DONNERSTAG and Adjuster Dunning, DONNERSTAG wrote the following letter to Adjuster Dunning dated July 9, 2009:

> Thank you for talking to me on Monday.   We still want to settle our case if you could get the check back from Bay Medical and make it out to me and my wife.   You can also put Bay Medical on the check for $10,000.   We also think you should pay the $2,000 for the motorcycle and the rental cost we asked for.   If you can agree, we will sign anything you need.   If you cannot pay, please write and tell us what you can pay.   We need the money by the end of the month.

On July 13, 2009, Adjuster Dunning issued new checks in the amount of $10,000 and $241 and sent the same documents that were sent with his June 17, 2009

2

correspondence including the "Release of All Claims".  Adjuster Dunning did nothing on the file from July 13, 2009 to August 17, 2009 to follow-up on the BI release.

On August 11, 2009, DONNERSTAG wrote the following letter to Adjuster Dunning:

> My motorcycle was worth $7,000.00. Allstate has only agreed to pay 5,063.80. You have sent a check for $500.  Can you pay the other $1,436.20? My wife and I will sign any paperwork you need. We want to finish this settlement in the next ten days.

On August 18, 2009, Adjuster Dunning sent a letter to DONNERSTAG in which Adjuster Dunning refused to pay the $1,436.20.

TAYLOR was not provided a copy of DONNERSTAG's letter of July 9, 2009, a copy of DONNERSTAG's letter of August 11, 2009, nor Adjuster Dunning's response dated August 18, 2009.

At the time of Adjuster Dunning's August 18, 2009 correspondence, Adjuster Dunning knew there was a dispute over the additional $1,436.20 requested by DONNERSTAG.  TAYLOR was not advised of that disputed value.  TAYLOR was never advised at all about the dispute nor that the case was not settled.

GEICO received a letter that DONNERSTAG wrote to Adjuster Dunning, which was date-stamped received on August 27, 2009, stating:   "We are sorry we could not reach an agreement.   We are returning all checks you sent us.   Thank you."

Four days later on September 1, 2009, Adjuster Dunning received a copy of the complaint and he then finally called TAYLOR's residence and spoke with Mrs. Taylor.  Adjuster Dunning gave Mrs. Taylor no information about what had happened, but only advised her that suit had been filed.

**Objection:**

**b. Defendant:**

On April 30, 2009, TAYLOR, while driving his vehicle, a 2007 Mazda, was traveling Southbound on Highway 98, attempting to make a left turn onto East 3rd Street, and impacted with DONNERSTAG'S motorcycle.  DONNERSTAG was traveling northbound on Highway 98 and was continuing through the intersection of East 3rd Street.

3

At the time of this accident, TAYLOR was insured under a GEICO automobile insurance policy.  The policy afforded bodily injury coverage in the amount of $10,000.00 per person/$20,000.00 per occurrence.   The GEICO policy also provided property damage liability coverage in the amount of $10,000.00.

On May 1, 2009, GEICO was notified of the accident by TAYLOR.   TAYLOR notified GEICO that he had a green turn arrow when he was proceeding through the intersection and was hit head-on by DONNERSTAG.   GEICO began to investigate the claim.

On May 4, 2009, GEICO received a voicemail from the DONNERSTAG's insurance company, Allstate Insurance Company ("ALLSTATE").   GEICO advised ALLSTATE that they would not be accepting liability since TAYLOR had the green turn arrow.   ALLSTATE stated that they would have a field adjuster obtain the police report.   Also, ALLSTATE was not aware of the extent of any injuries suffered by DONNERSTAG.   ALLSTATE was going to try to reach DONNERSTAG later that day.   Subsequently, GEICO requested the police accident report.

On May 5, 2009, GEICO obtained a recorded interview of its insured, TAYLOR, wherein TAYLOR informed GEICO that he had a green turn arrow when he was proceeding through the intersection and was hit by an individual on a motorcycle, driving northbound, which went through a red light and hit TAYLOR'S vehicle.

On May 7, 2009, GEICO obtained the police accident report via facsimile.   It was at that time that GEICO first discovered that TAYLOR was found to have been at fault by the investigating officer, for turning in front of the motorcyclist.   Also, it was learned that DONNERSTAG was ejected from his motorcycle and transported by EMS from the accident scene to Bay Medical Center.

On May 11, 2009, by way of GEICO employee, Nick Denton ("DENTON"), GEICO conducted the recorded interview of witness, Rudolph Cherry.   Mr. Cherry did not know whether TAYLOR or the motorcycle driver had the green light.

On May 11, 2009, DENTON also spoke to a "Judy" at Allstate, who informed DENTON that she spoke to DONNERSTAG's wife, who informed ALLSTATE that Mr. DONNERSTAG had suffered a fractured hip, wrist, and lower leg, and that the DONNERSTAGS had retained an attorney; the attorney information of Thompson & Manuel were then provided to GEICO.   The Allstate agent also informed GEICO that they had inspected DONNERSTAG's motorcycle, and that it

4

was a total loss.   ALLSTATE informed GEICO that ALLSTATE was handling the property damage claim, and would thereafter seek subrogation from GEICO.

On May 11, 2009, GEICO called Thompson & Manuel, and spoke to an employee named "Carol."   "Carol" informed GEICO that the DONNERSTAGS did get an attorney; however, it was not with their firm.

On May 11, 2009, GEICO employee, Jerry Dunning ("DUNNING") advised TAYLOR that he was taking over the claims handling of DONNERSTAG's claim. DUNNING informed TAYLOR of his policy limits, and the possibility that the claim could exceed the policy limits, of his right to obtain an attorney and his right to contribute funds toward settlement.

On or about June 8, 2009, DUNNING received Mrs. Donnerstag's handwritten "demand" letter, dated June 3, 2009, regarding the apparent property damage claim.   The letter stated as follows:

> *"I am writing this letter for my husband who is still recovering from his injury.   Send all insurance money you can. Allstate is only paying $5,500.00 for my 2006 Suzuki motorcycle, but it is worth $7,000.00.   Also, Allstate is taking out $5,000[sic].00. We are still owed $2,000.00 on my motorcycle. My fuel DOT helmet was damaged in the crash, and my jacket, shirt and pants cost $211.00 and my meals and gas cost $583. My husband has not had his motorcycle since the crash, it cost $150.00 a day to rent one. Please pay us for these expenses also we need the money by the end of this month."* (Exh. J– 6/3/09 Donnerstag letter to GEICO, Bates GEICO-TAYLOR—00745-00746)

Upon receipt of the DONNERSTAGS' letter, on June 9, 2009, DUNNING wrote to the Manuel Thompson Firm requesting that the law firm confirm that they represent Ronald Donnerstag, so GEICO could proceed with the settlement of the Bodily Injury claim.   Further, DUNNING informed MANUEL & THOMAS that he had left several messages with their office and had not received a return call.

On June 16, 2009, R. Waylon Thompson ("THOMPSON") wrote back to DUNNING, informing GEICO he did not represent Mr. Donnerstag; that the DONNERSTAGS simply consulted with Mr. Thompson.

On June 16, 2009, DUNNING contacted ALLSTATE to determine if the DONNERSTAGS were continuing to process their property damage claim through ALLSTATE, and left a voicemail message.   Later that afternoon, ALLSTATE

spoke to DUNNING.   At that time, DUNNING was advised that ALLSTATE claims examiner, Mary Callahan, was handling the DONNESTAGS' property damage claim.   DUNNING attempted to contact Ms. Callahan and left her a voicemail.

Also, on June 16, 2009, DUNNING contacted Bay Medical Center, and was informed that the Hospital had submitted their bills to ALLSTATE.   ALLSTATE apparently did not pay the bills, and the Hospital accordingly submitted the bills to Medicare and TRICARE, and they advised that the total bills were in the amount of $140,981.78.

On June 17, 2009, DUNNING sent a letter to Ronald Donnerstag (with a copy provided to TAYLOR) providing Mr. Donnerstag: an affidavit of coverage confirming TAYLOR's $10,000 per person/$20,000 per accident bodily injury coverage; a check for $10,000 made out to the DONNERSTAGS and BAY MEDICAL CENTER; a proposed Release; and a letter stating that based on the nature of the injuries being claimed, GEICO was tendering the bodily injury limits to Ronald Donnerstag, because there was indication that his injury value was in excess of $10,000.   The correspondence also requested that Mr. Donnerstag call GEICO if he had any questions.   At that time, the DONNERSTAGS had not even made a demand for bodily injury.

Also on June 17, 2009, DUNNING sent correspondence to the DONNERSTAGS in response to the DONNERSTAGS' June 3, 2009 letter, received by GEICO on June 8, 2009.   TAYLOR was copied on that letter as well.   The pertinent sections of GEICO's June 17, 2009 response were:

> *"First, in regards to the damages to your motorcycle, it is our understanding that you are going through your own carrier. After your carrier has settled with you, they will forward the subrogation supports, at which time we will review and issue payment to them. This will include your deductible, which they will give back to you once they receive our check. **In the event you want to go through GEICO for your damages, please contact me to set up an inspection of your vehicle**." [emphasis added]*   (Exh. O– 6/17/09 DUNNING letter to THE DONNERSTAGS with copy to TAYLOR, Bates GEICO-TAYLOR - 00776).

Along with this correspondence, GEICO reimbursed Ronald Donnerstag for fuel, his helmet, his jacket, his shirt and his pants, totaling $241.00.   GEICO informed Mr. Donnerstag that meals and gas were not covered under TAYLOR'S property damage coverage.

6

On July 6, 2009, Mr. Donnerstag called DUNNING, and DUNNING was advised Donnerstag supposedly never received the check for $241.00 or the $10,000 bodily injury check. DUNNING confirmed that the address he had was correct and informed Mr. Donnerstag that GEICO was waiting to receive the subrogation claim and supports from ALLSTATE.

On July 10, 2009, GEICO received the two checks returned by the Post Office. The Post Office was unable to forward.  On July 10, 2009, DUNNING left a message with The DONNERSTAGS.

On July 10, 2009, DUNNING called the DONNERSTAGS and left a voicemail that he needed a correct address to again remit payment.

On July 13, 2009, DUNNING called the DONNERSTAGS and spoke to Mrs. Donnerstag, who confirmed the address GEICO had was correct. On that same day, DUNNING reissued the checks.

On July 13, 2009, GEICO again tendered the $10,000.00 Bodily Injury Coverage to DONNERSTAG and the lien hospital, Bay Medical Center, as well as the $241.00.

On July 17, 2009, GEICO contacted BAY MEDICAL CENTER to determine the status of the outstanding bills.

On July 27, 2009, DUNNING contacted ALLSTATE.  "Mary" from ALLSTATE advised that the DONNERSTAGS were in the process of sending their title to ALLSTATE, and that ALLSTATE had not yet issued payment to the DONNERSTAGS for their property damage, which amounted to $5563.80, before the deductible.  ALLSTATE advised DUNNING that the DONNERSTAGS' deductible was $500.00.

On July 28, 2009, GEICO sent Mr. Donnerstag the $500.00 advance for his ALLSTATE deductible.

On August 5, 2009, ALLSTATE issued a property damage check in the amount of $5,063.80.

On August 11, 2009, the DONNERSTAGS sent a letter to DUNNING which stated:

> *"My motorcycle was worth $7,000.   Allstate has only agreed to pay me $5,063.80, you have sent a check for $500.   Can you pay the*

*other $1,436.20? My wife and I will sign any paperwork you need. We want to finish this settlement in the next ten days."* (Exh. V–8/11/09 the DONNERSTAGS letter to DUNNING, with copy to TAYLOR, Bates GEICO-TAYLOR—00748-00749).

On August 18, 2009, DUNNING sent Mr. Donnerstag a letter stating:

*"I am in receipt of your letter of August 11, 2009 regarding the damages to your motorcycle.  Unfortunately, we are only able to pay the value of your motorcycle. You indicated that your motorcycle is valued at $7,000, have you presented proof of that amount to your carrier to consider?  In this situation, you have chosen to go through your carrier for your damages. Once they settle with you, they will forward their supports and we will pay them. The $500 we paid to you, was fronting your deductible on your policy.  If you have any questions, please contact me at the telephone number listed below."*

On August 26, 2009, the DONNERSTAGS cashed the property damage check in the amount of $5,063.80.

On or about August 27, 2009, the DONNERSTAGS sent DUNNING a letter stating they were "sorry an agreement could not be reached" and returning all of the checks that were sent to the DONNERSTAGS.

On August 28, 2009, having not yet received the August 27, 2009 letter, DUNNING contacted Mr. Donnerstag to discuss the value of the motorcycle, and Mr. Donnerstag informed DUNNING that he returned all of the checks and had contacted an attorney.  DUNNING attempted to contact R. Waylon Thompson ("THOMPSON") via telephone.   Subsequently, THOMPSON sent correspondence to DUNNING acknowledging receipt of his telephone call and informing DUNNING it was his understanding that DUNNING was unable to reach a settlement with the DONNERSTAGS and providing a copy of the lawsuit filed against TAYLOR.

On September 1, 2009, DUNNING contacted TAYLOR, and spoke to Mrs. Taylor. DUNNING informed Mrs. Taylor that a lawsuit was filed and to contact him when they received the papers.

On September 4, 2009, DUNNING left a message for THOMPSON, asking THOMPSON if he wanted GEICO to reissue checks to THOMPSON for the bodily injury limits and the amount of any property damage claim.

On September 8, 2009, DUNNING contacted TAYLOR and discussed the status of the claim in detail and specifics regarding offers that were made to the DONNERSTAGS. Further, DUNNING informed TAYLOR that the only purported issue was the fact that the DONNERSTAGS wanted an additional $1,436.20 for the motorcycle; however, the DONNERSTAGS went through their own insurance, and DUNNING had even offered for the DONNERSTAGS to process their property damage claim through GEICO, so that GEICO could evaluate the value of the motorcycle. DUNNING also advised TAYLOR that defense counsel would contact him shortly.

On September 9, 2009, DUNNING sent correspondence to TAYLOR confirming receipt of the suit papers, and informing TAYLOR of the contact information for the retained counsel. The letter also informed Taylor that the DONNERSTAGS were seeking an amount in excess of his policy limits, and that he may want to, but need not, obtain his own attorney to protect his interests.

On September 9, 2009, DUNNING sent an additional letter to TAYLOR, stating that the total claims may exceed his coverage, and that GEICO would make every effort to settle all claims within the limits. However, if GEICO was not able to do so, TAYLOR may be personally exposed for any amounts in excess of his limits. DUNNING advised TAYLOR again of his right to obtain his own attorney to protect any interests above the policy limits.

**Objection:**

4.  **A list of all exhibits and Rule 5.04 exhibit substitutes to be offered at trial with notation of all objections thereto:**

    TAYLOR's Exhibit list:          SEE ATTACHED EXHIBIT "A".1

    GEICO's Exhibit List:          SEE ATTACHED EXHIBIT "B".

5.  **A list of all witnesses who may be called at trial:**

    TAYLOR's Witness list:          SEE ATTACHED EXHIBIT "C".

---

1 Plaintiff, TAYLOR has not received Defendant, GEICO's objections to Plaintiff's Trial Exhibits.

9

GEICO's Witness List:        SEE ATTACHED EXHIBIT "D".

6.    **A list of all expert witnesses including, as to each such witness, a statement of the subject matter and a summary of the substance of his or her testimony:**

    a.    TAYLOR:    Rutledge L. Liles, Esq. will testify as disclosed in his expert report.   Among other opinions, Mr. Liles is expected to provide the opinion that GEICO did not meet its duties of good faith in the handling of DONNERSTAG's claim.

    b.    GEICO:        Kathy J. Maus, Esq. will testify as disclosed in her expert report.   Among other opinions, Ms. Maus is expected to provide the opinion that GEICO met its duties of good faith in the handling of DONNERSTAG's claim.

7.    **Plaintiff's statement of the elements of each claim for money damages and the amount being sought with respect to each such element:**

The total amount of Judgment for damages entered in the underlying action to DONNERSTAG and against TAYLOR in the amounts of Nine Hundred Nineteen Thousand Two Hundred Twenty Dollars and Thirty-three Cents ($919,220.33) dated June 10, 2011, plus interest at the rate of 6% per annum from date of Judgment, plus an unliquidated amount of attorneys' fees and taxable costs.

8.    **A list of all depositions to be offered in evidence at trial (as distinguished from possible use for impeachment), including a designation of the pages and lines to be offered from each deposition:**

    a.    TAYLOR:            None at this time.

    b.    GEICO:            None at this time.

9.    **A concise statement of those facts which are admitted and will require no proof at trial, together with any reservations directed to such admissions:**

On April 30, 2009, TAYLOR was the owner and operator of a vehicle that was involved in a motor vehicle accident in Bay County, Florida, with DONNERSTAG.   TAYLOR, through his negligent operation of his vehicle, directly and proximately caused the motor vehicle accident.   DONNERSTAG was injured as a result of the motor vehicle accident and subsequently filed a lawsuit against TAYLOR in Bay, Florida, styled, *RONALD DONNERSTAG and his wife,*

*HSIU DONNERSTAG, Plaintiff v. EDDIE KING TAYLOR, Defendant,* Case No.: 09-4376-CA.   Prior to April 30, 2009, GEICO issued a contract of liability insurance, Policy Number 4134-48-47-34 (hereinafter "POLICY"), to TAYLOR for valuable consideration, which POLICY was in full force and effect on April 30, 2009, and afforded liability coverage to TAYLOR for damages to the extent of Bodily Injury Liability coverage in the amount of $10,000.00 per person, and Property Damage coverage in the amount of $10,000.00 per person. The above-described accident was an event covered by the terms of the POLICY. Notice of said occurrence was promptly and timely given to GEICO, and TAYLOR complied with all terms and requirements of the POLICY.

10.   **A concise statement of applicable principles of law on which there is agreement:**

The parties agree that Florida substantive law, the Federal Rules of Evidence and the Federal Rules of Civil Procedure apply in this action.

11.   **A concise statement of those issues of fact which remain to be litigated (without incorporation by reference to prior pleadings and memoranda):**

Whether GEICO acted in bad faith in handling the DONNERSTAG's claims against EDDIE K. TAYLOR.

12.   **A concise statement of those issues of law which remain for determination by the Court (without incorporation by reference to prior pleadings or memoranda):**

None.

13.   **A concise statement of any disagreement as to the application of the Federal Rules of Evidence or the Federal Rules of Civil Procedure:**

None.

14.   **A list of all motions or other matters which require action by the Court:**

GEICO's Motions in Limine (to be filed).
TAYLOR's Motions in Limine (to be filed).

15.   **Other:**

Records custodians are waived.

11

All exhibits are stipulated to be authentic, except as otherwise noted on the exhibit list.

Copies or duplicates are admissible.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of February, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to Dennis P. Dore, Esquire ddore@kelleykronenberg.com, and Jessica L. Lanifero jlanifero@kelleykronenberg.com.

MAYES LAW FIRM, P.A.

__/s/ Robert J. Mayes_____
**ROBERT J. MAYES-**Florida Bar #150115
**JONATHAN R. MAYES-**Florida Bar #0147346
913 Gulf Breeze Pkwy., Suite 44
Gulf Breeze, FL 32561
(850) 932-1962
(850) 932-1963 Facsimile
Email: jonathan@mayeslaw.com
**ATTORNEYS FOR PLAINTIFF**

12