UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDDIE K. TAYLOR,

      Plaintiff,

v.                              Case No:  8:12-cv-2448-T-AEP

GEICO INDEMNITY COMPANY,

      Defendant.

_____/

## <u>ORDER & MEMORANDUM</u>

This cause is before the Court on the Defendant GEICO Indemnity Company's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial, and Incorporated Memorandum of Law ("Def.'s Mot."), Dkt. No. 155, and Plaintiff's responses in opposition thereto (collectively, "Pl.'s Resp."), Dkt. Nos. 162-163.  For the reasons that follow, Defendant's motion (Dkt. No. 155) is DENIED.

### I.    Background

This action was tried to jury verdict on April 15, 2015, where the jury found for Plaintiff Eddie K. Taylor ("Mr. Taylor") and against GEICO Indemnity Company ("GEICO").  The case arises from a motor vehicle accident involving GEICO's insured, Mr. Taylor, and Ronald Donnerstag ("Mr. Donnerstag"), which resulted in an underlying personal injury lawsuit and verdict against Mr. Taylor and in favor of Mr. Donnerstag and Hsiu Donnerstag ("Mrs. Donnerstag") (collectively, "the Donnerstags").

At trial, the jury heard evidence from Mr. Taylor contending GEICO breached its duty of good faith to Mr. Taylor in handling the Donnerstags' claims.  Among other things, Mr. Taylor asserted GEICO failed to keep him adequately informed of a purported settlement offer from the

Donnerstags, and failed to settle the case when it could and should have.  GEICO presented

evidence asserting, to the contrary, that GEICO did not breach its good faith duty and

sufficiently protected Mr. Taylor's interests to the extent required under Florida law.  Following

the close of evidence, the jury rendered a verdict finding Mr. Taylor had established that GEICO

acted in bad faith, and also found GEICO to have failed to establish that the Donnerstags were

unwilling to settle their claims against Mr. Taylor and that GEICO was not presented with a

reasonable opportunity to settle the Donnerstags' claims against Mr. Taylor.  *See* Verdict Form,

Dkt. No. 134.

## II.     Standard

The standard for granting a renewed motion for judgment as a matter of law under Fed.

R. Civ. P. 50(b) is the same as the standard for granting the pre-submission motion under Rule

50(a).  *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007) (citing 9A Charles

Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537 (2d ed.1995)).  Under

that standard, "a district court's proper analysis is squarely and narrowly focused on the

sufficiency of evidence."  *Id.*  A court "should render judgment as a matter of law when there is

no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."

*Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004).  "The issue is

not whether the evidence was sufficient for [the losing party] to have won, but whether the

evidence was sufficient for it to have lost."  *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d

1259, 1265 (11th Cir. 2008).

While I review all evidence of record, I am to draw all reasonable inferences in favor of

the nonmoving party.  I "must disregard all evidence favorable to the moving party that the jury

is not required to believe.  .  .[giving] credence to the evidence favoring the nonmovant as well

as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Products, Inc*, 530 U.S. 133, 150-51 (internal citation and quotations omitted).

Moreover, I may not make credibility determinations or weigh the evidence. *Id.* at 150; *Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1560 (11th Cir. 1995). "The line of demarcation which [I am] required to walk is ephemeral: [I] must conclude that an inference is unreasonable without falling into the trap of weighing all the evidence." *Helene Curtis Indus., Inc. v. Pruitt*, 385 F.2d 841, 851 (5th Cir. 1967); *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982). "The standard for determining whether an inference is allowable is generally whether it is a reasonable one, that is, whether it is one that 'reasonable and fair-minded men in the exercise of impartial judgment' might draw from the evidence." *Daniels*, *supra*, 692 F.2d at 1326 (citation omitted). Ultimately, I am to leave the jury's verdict intact "if there is evidence from which [the jury]. . .reasonably could have resolved the matter the way it did." *Rodriguez*, 518 F.3d at 1264.

### III.   Discussion

#### a.  Judgment as Matter of Law

GEICO moves for judgment as a matter of law, asserting an insufficient evidentiary basis as well as legal error in the Court's jury instructions. For the reasons that follow, GEICO's contentions are without merit.

GEICO contends that the evidence of record was insufficient under Federal Rule of Civil Procedure 50 to support the jury's bad faith determination. GEICO first advances a series of theories through which GEICO asserts insufficient evidence to support the jury's determination that the Donnerstags were willing to settle their claims and that a reasonable opportunity to settle

existed.[1]  GEICO first asserts that no evidence exists that GEICO was provided a reasonable opportunity to settle.  GEICO also argues that the Donnerstags failed to provide GEICO with adequate notice of the desire to condition settlement of the subject bodily injury claim on demanded terms regarding the subject property damage claims.

Upon review of the record, neither of these contentions hold merit and a legally sufficient evidentiary basis exists to support the jury's findings in this regard.  The jury received three written correspondence from Mr. Donnerstag to GEICO dated July and August 2009, all of which are probative of the proposition that the Donnerstags were willing to settle all claims against Mr. Taylor. A July 9, 2009 letter from the Donnerstags to GEICO stated:

> Thank you for talking to me on Monday. *We still want to settle our case* if you could get the check back from Bay Medical and make it out to me and my wife. You can also put Bay Medical on the check for $10,000. We also think you should pay the $2,000 for the motorcycle and the rental cost we asked for. *If you can agree, we will sign anything you need.* If you cannot pay, please write and tell us what you can pay. We need the money by the end of the month.

Pl.'s Trial Ex. 1a, Admitted April 7, 2015, Dkt. No. 135 (emphasis added).  On August 11, 2009, the Donnerstags again wrote GEICO stating:

> My motorcycle was worth $7,000.00 Allstate has only agreed to pay me $5,063.80. You have sent a check for $500. Can you pay the other $1,436.20? *My wife and I will sign any paperwork you need. We want to finish this settlement in the next ten days.*

Pl.'s Trial Ex. 23, Admitted April 7, 2015, Dkt. No. 135 (emphasis added).  Finally, in reply to GEICO's response, Mr. Dunning's late August note, date-stamped August 27, 2015, conveyed that "[the Donnerstags] are *sorry we could not reach an agreement. We are returning all checks*

---

[1] The jury was instructed to consider GEICO's affirmative defenses in this regard, Ct.'s Final Jury Instr. at 14, Dkt No. 132, and subsequently answered "No" when asked whether the Donnerstags were unwilling to settle their claims and whether GEICO was not presented with a reasonable opportunity to settle the Donnerstags' claims against Mr. Taylor.  Verdict Form, Dkt. No. 134.

you sent us. Thank you."  Pl.'s Trial Ex. 26, Admitted April 7, 2015, Dkt. No. 135 (emphasis added).  These letters, in and of themselves, could reasonably evidence the Donnerstags' willingness to settle.

Moreover, to the extent GEICO challenges as unreasonable the inference that, despite the amount of medical bills incurred at the time, Mr. Donnerstag was willing to settle all claims against Mr. Taylor for his stated demands, I disagree and ultimately refuse to substitute my judgment for that of the jury.  *See Reeves*, 530 U.S. 133 at 150 ("[T]he court . . . may not make credibility determinations or weigh the evidence.").  Indeed, the jury heard deposition testimony of Mr. Donnerstag that directly supports such an inference.  Mr. Donnerstag testified that the exchange of letters to and from GEICO accurately reflected settlement communications Mr. Donnerstag would have had with GEICO regarding settling claims against Mr. Taylor.  Audio Tr., April 15, 2015, 10:10:50.  When asked whether, as of July 2009, Mr. Donnerstag was willing to resolve any claim for bodily injury against Mr. Taylor in return for $10,000, Mr. Donnerstag responded "at that time, yes."  Audio Tr., April 15, 2015, 9:48:15.  Mr. Donnerstag also responded "yes sir" when asked whether, as of July 9 2009, he was still willing to resolve any claim for bodily injury against Mr. Taylor in exchange for a check for $10,000 made out to Mr. Donnerstag and Bay Medical, noting he "was willing to settle if they met [] what [he] asked for."  Audio Tr., April 15, 2015, 9:51:55, 9:59:00.   In fact, at multiple points Mr. Donnerstag reiterated that, in addition to the personal injury amount noted above, he would be willing to settle claims against Mr. Taylor if he was paid his stated property value of vehicle, reimbursed for personal property damaged during the accident, and paid for traveling expenses incurred by Mrs. Donnerstag while he was under medical and rehabilitative care.[2]  Audio Tr., April 15, 2015,

---

[2] Mr. Donnerstag had specifically outlined his property damages as follows: $7,000.00 for the motorcycle; the $500 deductible under the Allstate policy; $241 for his helmet, jacket,

9:54:45 ("Yes sir I was willing to accept it."); Audio Tr., April 15, 2015, 9:51:30-9:53:20.

GEICO's own claim notes, principally a June 29, 2009 entry, expressly reflect "concern"

regarding Mr. Donnerstag's apparent attempts to structure this type of settlement.  Pl.'s Ex. 1a,

Admitted April 7, 2015, Dkt. No. 135.

Mr. Donnerstag's testimony also strongly supports the encompassing nature and finality

of any such settlement, such that Mr. Donnerstag intended to settle *all* possible claims against

Mr. Taylor arising from the accident.  He testified he "would have signed anything they had,"

Audio Tr., April 15, 2015, 9:55:35, "was willing to close this case out," Audio Tr., April 15,

2015, 9:57:30, "wanted to resolve the whole thing period . . . it's open to discussion," Audio

Tr., April 15, 2015, 9:58:00, and that his written requests during the material period "would have

settled the case right then and there simple as that and it would have gone no further."  Audio

Tr., April 15, 2015, 9:58:15.

Furthermore, record evidence details the purported reasons behind Mr. Donnerstag's

change of heart.  Mr. Donnerstag testified that he expressed and explained to GEICO that he

would be willing to settle claims for bodily injury if, and only if, he was paid additional damages

he was seeking. Audio Tr., April 15, 2015, 9:55:30 ("Yes sir I told them that.").  Mr. Donnerstag

highlighted his frustration with GEICO's response to his proposed terms, stating "[Mr. Dunning]

never answered any of the calls or anything to me."  Audio Tr., April 15, 2015 9:44:20.  Mr.

Donnerstag went on to testify that he changed his mind regarding a potential settlement

approximately one month later when he was not receiving cooperation from GEICO "to settle

out the case." Audio Tr., April 15, 2015, 9:51:30-9:53:20.  It is at this time, Mr. Donnerstag

---

shirt and pants; $583 for meals and gas; and $150.00 per day rental.  Pl.'s Trial Ex. 13, Admitted
April 7, 2015, Dkt. No. 135.  Mr. Taylor's GEICO policy provided for property damage liability
coverage in the amount of $10,000.00.  *E.g.*, Trial Tr. at 69, April 7, 2015, Dkt. No. 170.

declared, that he returned all checks because GEICO did not meet his offer.  Audio Tr., April 15, 2015, 10:10:15.

Furthermore, Mr. Donnerstag's testimony to this end was complimented at trial by that of Plaintiff Expert Rutledge Liles ("Mr. Liles").  Mr. Liles testified that GEICO had multiple reasonable opportunities to settle ranging from June 2009 to August 2009.  Trial Tr. at 148, 152, 161-62, April 8, 2015, Dkt. No. 171.  Mr. Liles further testified that GEICO should have paid all of the monies requested in June as quickly as possible in light of the magnitude of liability faced by Mr. Taylor.  Trial Tr. at 164, April 8, 2015, Dkt. No. 171.  Thus, from the foregoing factual evidence, the jury could reasonably and legitimately infer that the Donnerstags were willing to settle and that a reasonable opportunity for settlement of all claims against Mr. Taylor existed.

GEICO further tenders a series of arguments that it asserts bear on, or in some cases compel, the conclusion that GEICO did not have a reasonable opportunity to settle.  First, GEICO argues that all opportunities to settle were obstructed by the Donnerstags' improper attempts to link property damage and bodily injury claims.  GEICO, however, provides no authority, and the Court knows of none, that supports GEICO's position that an opportunity to settle is rendered per se unreasonable if structured in a manner that conditions bodily injury claims to property damage.  While I recognize the policy concerns raised by GEICO, there is simply no legal basis to find as a matter of law on these grounds.  *Perrien v. Nationwide Mut. Fire Ins. Co.*, No. 8:08-CV-2586-T-30TGW, 2010 WL 2921621, at *3 (M.D. Fla. July 23, 2010) ("There is simply no Florida authority that prohibits a claimant from offering to settle all claims and damages arising out of an accident.").  As this Court has previously declared, "such a demand is common and there are a number of Florida cases that have noted that an insurer could be liable for bad faith based on its failure to accept a settlement offer that included demands for

both bodily injury damages and property damages." *Id.* (citing *GEICO Gen. Ins. Co. v. McDonald*, 315 Fed. Appx. 181 (11th Cir. Nov.20, 2008); *Quigley v. Gov't Employees Ins. Co.*, 2008 WL 126598 (M.D.Fla. Jan.10, 2008); *Macola v. Gov't Employees Ins. Co.*, 410 F.3d 1359 (11th Cir.2005). Moreover, expert testimony at trial from Mr. Liles lent credence to Mr. Taylor's position that, from an industry perspective, there is nothing unreasonable about linking such claims, instead referring to it as "common practice." Trial Tr. at 156-57, April 8, 2015, Dkt. No. 171; *cf. Quigley*, 2008 WL 126598 at *3 (finding that the demand at issue was clear enough to GEICO that it had provided settlement authority for both portions of the claim before the demand's expiration).

GEICO next asserts that the Donnerstags' purported lack of responsiveness to GEICO's requests to inspect the subject motorcycle precluded GEICO from valuing the property damage at issue, thus undermining the jury's bad faith determination. This assertion, as it relates to a reasonable opportunity to settle, fails on two grounds. First, competent evidence at trial supported the inference that GEICO was not without opportunity to inspect Mr. Donnerstag's motorcycle. GEICO's Regional Claims Manager Mark Sugden ("Mr. Sugden") testified that vehicle inspection could be accomplished in as little as one day if GEICO had "the ability to look at the vehicle or the information regarding the values documented, or documentation is sent to us or given to us, either way." Trial Tr. at 50-51, April 10, 2015, Dkt. No. 173. Mr. Sugden further conceded that GEICO never requested permission from Mr. Donnerstag or Allstate to inspect the motorcycle, outside its general inquiry as to whether Mr. Donnerstag would like GEICO to handle that aspect of the claim. Trial Tr. at 97-99, April 10, 2015, Dkt. No. 173. It also appears from the testimony of Mr. Sugden and a May 11, 2009 ALOG entry by a Karen Hall that GEICO was, at least at one point in time, aware of the vehicle's location at Gulf Towing in Panama City,

Florida.  Trial Tr. at 99, April 10, 2015, Dkt. No. 173.  Plaintiff's expert Mr. Liles further

testified that nothing prevented GEICO from fulfilling its obligation to inspect the motorcycle.

Trial Tr. at 217, April 9, 2015, Dkt. No. 172.  And, these facts notwithstanding, GEICO cites no

authority to support the premise that actual inspection is a necessary condition to the existence of

a reasonable opportunity to settle, or otherwise that Allstate's inspection coupled with other

information GEICO had at the time was insufficient to allow for such an opportunity.

Furthermore, as GEICO's argument relates to whether GEICO acted in bad faith,

sufficient evidence supports the jury's determination.  As I instructed the jury, GEICO's duty of

good faith under Florida law "obligates [GEICO] to advise the insured of settlement

opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of

an excess judgment, and to advise the insured of any steps he might take to avoid [the] same."

*Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (per curiam); Ct.'s

Final Jury Instr. at 11-13, Dkt No. 132.  GEICO must "investigate the facts, give fair

consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible,

where a reasonably prudent person, faced with the prospect of paying the total recovery, would

do so."  *Boston Old Colony*, 386 So. 2d at 785.  The standard of care GEICO is required to

exercise is "the same degree of care and diligence as a person of ordinary care and prudence

should exercise in the management of his own business," and decisions must be made "in good

faith and with due regard for the interests of [GEICO's] insured."  *Id.*

The jury in this action was charged, in accordance with Florida law, to determine whether

GEICO acted in bad faith under a totality of the circumstances standard.  *See Berges v. Infinity*

*Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004) ("[T]he question of whether an insurer has acted in bad

faith in handling claims against the insured is determined under the totality of the circumstances

standard." (internal quotation marks omitted)); Ct.'s Final Jury Instr. at 11-13, Dkt No. 132.  The

question of whether this standard has been met is ordinarily one reserved for jury determination.

*See Berges,* 896 So. 2d at 680; *Campbell v. Gov't Emps. Ins. Co*., 306 So. 2d 525, 530-31 (Fla.

1974) (noting that whether an insurer acted with "reasonable diligence" and "ordinary care" are

ordinarily factual considerations to be decided by a jury); *see also Farinas v. Fla. Farm Bureau*

*Gen. Ins. Co*., 850 So. 2d 555, 559 (Fla. 4th DCA 2003) (per curiam).

 Legally sufficient evidence supports the jury's bad faith determination with regard to

GEICO.  Turning first to GEICO's nonfeasance in advising its insured, Mr. Taylor, Mr. Dunning

testified that upon receiving the May 2009 liability evaluation finding Mr. Taylor to be ninety-

percent liable, he did not disclose the evaluation to Mr. Taylor as he found the details of the

excess liability to be neither necessary nor significant.  Trial Tr. at 137-38, April 7, 2015, Dkt.

No. 170.  Mr. Sugden testified that under no circumstances should such information be kept from

the insured.  Trial Tr. at 7, April 10, 2015, Dkt. No. 173.  Mr. Dunning also testified that Mr.

Taylor was not advised of the magnitude of the Donnerstags' hospital bill—an amount in excess

of $140,000.00.  Trial Tr. at 188-89, April 7, 2015, Dkt. No. 170.  Additionally, GEICO did not

provide Mr. Taylor with detailed information regarding their communications with the

Donnerstags, notably the August 11, 2009 letter in which the Donnerstags requested $1,436.20 to

ostensibly settle the entire case.  Trial Tr. 13-16, April 8, 2015, Dkt. No. 171.  In fact, neither the

August 11, 2009 letter nor GEICO's response were forwarded/copied to Mr. Taylor.  Trial Tr.

13-16, April 8, 2015, Dkt. No. 171.  Mr. Taylor was also not made privy to the August 26, 2009

letter in which the Donnerstags returned the issued checks and expressed regret that an

agreement could not be reached.  Trial Tr. 16, April 8, 2015, Dkt. No. 171; Pl.'s Trial Ex. 26,

Admitted April 7, 2015, Dkt. No. 135.  The evidence at trial further revealed it was not until

September 1, 2009, that Mr. Dunning telephonically contacted Mr. Taylor's residence, reaching

his wife, to inform her of notice of the complaint GEICO received on that date.  Trial Tr. at 29-

33, April 8, 2015, Dkt. No. 171.  Mr. Dunning testified that his subsequent September 8th

conversation with Mr. Taylor was the first time he, and to his knowledge any GEICO adjustor,

had spoken with Mr. Taylor from May 2009 to September 2009.[3]  Trial Tr. at 32, April 8, 2015,

Dkt. No. 171.  Plaintiff's expert Mr. Liles accordingly testified GEICO failed Mr. Taylor in its

duty to advise him, noting that Mr. Dunning should have advised Mr. Taylor of the specifics of

the disputed amounts of the opportunity to contribute to any settlement.  Trial Tr. at 146-47, 167,

186, April 8, 2015, Dkt. No. 171.  The foregoing alone is sufficient evidence for the jury to infer

bad faith through a failure to advise Mr. Taylor.  *See Boston Old Colony*, 386 So. 2d at 785

(discussing the insurer's duty to  advise the insured of settlement opportunities, to advise as to

the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to

advise the insured of any steps he might take to avoid the same).

Turning next to GEICO's decision-making, actions, and purported motive, the record

contains sufficient evidence for the jury to infer that GEICO acted in a way that surpassed mere

negligence and instead rose to the level of bad faith in that it placed its own interests ahead of

Mr. Taylor's.  As noted above, a claims note dated June 29, 2009 expressed concern that the

Donnerstags may be attempting to tie property damage claims into a bodily injury settlement.

Pl.'s Ex. 1a, Admitted April 7, 2015, Dkt. No. 135.  Mr. Dunning testified at trial that conflict

regarding property damage carries the potentiality of jeopardizing a bodily injury settlement.

Trial Tr. at 172-73, April 7, 2015, Dkt. No. 170.  Mr. Dunning also testified, however, to a lack

---

[3] Mr. Dunning was unable to recall whether he advised Mr. Taylor during their September 8, 2015 conversation of the Donnerstags' request for $1,436.20.  Trial Tr. at 82, April 8, 2015, Dkt. No. 171.

of concern that such a conflict with Mr. Dunning would jeopardize the opportunity to settle all claims against Mr. Taylor.  Trial Tr. at 179, April 7, 2015, Dkt. No. 170.  When asked why an inquiry was not made into whether this actually was the Donnerstags' intent, Mr. Dunning testified that such an inquiry was not made because "it's not relevant."  Trial Tr. at 241-42, April 7, 2015, Dkt. No. 170.  In the same vein, Mr. Dunning testified that the purported attempts to tie the two damages together into a settlement were not significant because "[t]here is no proof" that was the case, also noting that it never crossed his mind.  Trial Tr. at 237, 261 April 7, 2015, Dkt. No. 170.  Indeed, throughout his testimony, Mr. Dunning maintained that linkage of the two claims in a settlement would be inappropriate in light of the Donnerstags' going through Allstate for property damage and GEICO's practice to deal with claims on the merits separately.  *E.g.*, Trial Tr. at 23, April 8, 2015, Dkt No. 171.

Against this stood Mr. Liles' testimony, that GEICO should have, in light of its fiduciary obligations to Mr. Taylor, contacted the Donnerstags to clarify what was being communicated through the subject letters.  Trial Tr. at 153-60, April 8, 2015, Dkt. No. 171.  The record contains ample evidence that the delay resulting from this failure was of financial benefit to GEICO.  Mr. Liles opined that delaying payment on property damage confers financial benefit to GEICO by allowing interest to accrue on the unpaid sums.  Trial Tr. 191-92, April 8, 2015, Dkt. No. 171.  Moreover, Mr. Dunning conceded that had GEICO been more assertive in fully paying the stated value of Mr. Donnerstag's motorcycle, the worst case scenario would be that GEICO would have overpaid by approximately $1,400.00, thus risking losing that sum and exposing itself to extra-contractual liability in addition to legal action from Allstate.  Trial Tr. at 69-70, 113, April 9, 2015, Dkt. No. 172.  Mr. Dunning further emphasized that GEICO, and insurance companies in general, are generally adverse to loosely paying out claims and don't have time to call every

adverse carrier.  Trial Tr. 70-72, April 9, 2015, Dkt. No. 172 ("So could I make a phone call? Yes, I could have made a phone call, but that's not how we do business.").  In light of the foregoing as well as Mr. Liles' testimony that through this and other failures GEICO failed to settle when it could and should have, Trial Tr. at 148, April 8, 2015, Dkt. No. 171, a jury could reasonably draw the inference that GEICO placed its interests – whether they be administrative convenience or direct pecuniary gain – ahead of those of Mr. Taylor.

Finally, GEICO argues there was no evidence of record to support a causal connection between the underlying bodily injury excess verdict and GEICO's purported failure to settle the Donnerstags' property damage claims because there was no excess verdict relating to the property damage claim.  As noted above, however, nothing in Florida law forecloses an insured's liability for bad faith based on a failure to accept a settlement offer that included demands for both bodily injury damages and property damages.  *Perrien*, 2010 WL 2921621 at *3.  It follows that, even if there was no excess verdict relating to the subject property damage claim, GEICO remains liable in this action by virtue of its remaining good faith duties owed to Mr. Taylor. GEICO cites no authority, and the Court knows of none, that would absolve GEICO from liability relating to an underlying bad faith verdict simply because an underlying personal injury verdict did not result in a judgment in excess of the insured's property damage limit.

Turning to the record, sufficient competent evidence supports a causal connection between the damages claimed and GEICO's bad faith.  *See Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 903-04 (Fla. 2010) (noting that "a causal connection between the damages claimed and the insurer's bad faith" is required to support a claim of bad faith); *Mesa v. Clarendon Nat. Ins. Co.*, 799 F.3d 1353, 1360 (11th Cir. 2015) (same); *but cf.* Fl. Std. Jury Inst. 404.6, notes on use (noting that no part of the legal cause instruction should be given if the court is going to

13

determine damages).  As noted above, sufficient evidence supports the Donnerstags' willingness to settle the claim within Mr. Taylor's policy limits, GEICO's notice of this and opportunity to effectuate such, and Mr. Taylor's ignorance of the existence and terms of the Donnerstags' offer.  Additionally, the record also sufficiently supports Mr. Taylor's willingness to contribute to any such settlement during the material period.  Mr. Taylor testified that he read the correspondence from GEICO and was under the impression "everything was fine."  Trial Tr. at 111, April 10, 2015, Dkt. No. 173.  From Mr. Taylor's testimony and the circumstances of the case the jury was entitled to infer that, had Mr. Taylor been advised of the Donnerstags' offer – a relatively small amount of money compared to their incurred medical expenses – Mr. Taylor would have contributed funds to settle the matter.  This especially holds true in light of the magnitude of Mr. Taylor's apparent responsibility for the accident.  *See Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (noting that under federal law, nothing precludes jurors from pyramiding inferences so long as the inference relied upon is reasonable under federal standards); *Equitable Life Assur. Soc. of U.S. v. Fry*, 386 F.2d 239, 245 (5th Cir. 1967). Accordingly, this evidence, combined with the underlying verdict against Mr. Taylor, supports a causal connection between the damages claimed and GEICO's bad faith.

### b.  Related Motion for New Trial

GEICO moves, in the alternative, for a new trial. I may grant a motion for a new trial if I find the jury's verdict to be contrary to the great weight of the evidence.  *E.g.*, *Watts v. Great Atl. & Pac. Tea Co.*, 842 F.2d 307, 310 (11th Cir. 1988); *Williams v. City of Valdosta*, 689 F.2d 964, 972 (11th Cir.1982).  I am permitted to weigh the evidence, "but to grant the motion [I] must find the verdict contrary to the great, not merely the greater, weight of the evidence."  *Williams*, 689 F.2d at 972.  In addition to a verdict being contrary to the great weight of the evidence, I

have discretion to grant a motion for new trial on the basis of legal error.  *Id*. at 974-75 n.8; *O'Neil v. W. R. Grace & Co*., 410 F.2d 908, 913 (5th Cir. 1969); *accord Lind v. Schenley Indus., Inc*., 278 F.2d 79, 90 (3d Cir. 1960).

In pertinent part, Federal Rule of Civil Procedure 61 provides: "No error in either the admission or exclusion of evidence – or any other error by the court or a party – is ground for granting a new trial or for setting aside a verdict .  .  . unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Fed. R. Civ. P. 61.  Consistent with this principle, the law of this Circuit holds a new trial is warranted only where the error has caused substantial prejudice to the affected party or resulted in substantial injustice.  *Peat, Inc. v. Vanguard Research, Inc*., 378 F.3d 1154, 1162 (11th Cir. 2004).  A number of factors are considered, such as "the number of errors, the closeness of the factual disputes (i.e., the strength of the evidence on the issues affected by the error), the prejudicial effect of the evidence at issue, whether counsel intentionally elicited the evidence, whether counsel focused on the evidence during the trial, and whether any cautionary or limiting instructions were given.  *See id*.; *see also Aetna Cas. & Sur. Co. v. Gosdin*, 803 F.2d 1153, 1160 (11th Cir.1986); *Nettles v. Electrolux Motor AB*, 784 F.2d 1574, 1581 (11th Cir.1986).  Ultimately, "'[i]f the error did not influence the jury, or had but very slight effect,' then the error did not affect the substantial rights of the parties and the verdict should stand." *Rosenfeld v. Oceania Cruises, Inc*., 682 F.3d 1320, 1333 (11th Cir. 2012) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)).

Upon review of the record in this case, I find that a new trial is not warranted.  Turning to GEICO's first stated grounds – that erroneous evidentiary rulings affected the jury's verdict – I

find no merit in GEICO's contentions and find that, at best, any errors were harmless.

Specifically, GEICO contends testimony was erroneously admitted regarding 1) GEICO's duty to inquire into the Donnerstags' purported attempt to tie together the bodily injury and property damage claims, 2) GEICO's placement of Bay Medical Center's name on the bodily injury tender, and 3) evidence of events transpiring after the filing of the underlying lawsuit.  As discussed above, Plaintiff's expert, Mr. Liles, testified that GEICO should have, in light of its fiduciary obligations to Mr. Taylor, contacted the Donnerstags to clarify what was being communicated through the subject letters.  Trial Tr. at 153-60, April 8, 2015, Dkt. No. 171.  This testimony, and other related evidence, properly relates to GEICO's duty of good faith to investigate the facts, advise Mr. Taylor of settlement opportunities, and advise Mr. Taylor of any steps he might take to avoid an excess judgment.  *See Boston Old Colony Ins. Co*, 386 So. 2d at 785.  Likewise, evidence of action or inaction taken by GEICO after August 27, 2009, such as GEICO's September 2009 interactions with Mr. Taylor, either directly or circumstantially relates back to GEICO's good faith duty during the pre-litigation period.[4]  Moreover, at least some case-law suggests that evidence of the insurer's conduct during the underlying litigation may also bear on the question of bad faith.  *See, e.g., Home Ins. Co. v. Owens*, 573 So. 2d 343, 344 (Fla. 4th DCA 1990) (citing *T.D.S. Inc. v. Shelby Mutual Insurance Co*., 760 F.2d 1520 (11th Cir.1985), rehearing denied, 769 F.2d 1485 (11th Cir.1985)).  Finally, as to GEICO's placement of Bay Medical Center's name on the bodily injury tender, it does appear that this proposition was one of many theories Mr. Taylor advanced at trial to evidence GEICO's bad faith.  Questioning of Mr. Liles, for example, elicited opinions as to whether GEICO's placement on Bay Medical

---

[4] I decline to find harmful error in GEICO's assertion that Mr. Liles' Rule 26 expert disclosure forecloses the introduction of testimony regarding the period subsequent to the Donnerstags' August 27, 2009 rejection of the policy limits.

Center's name on the bodily injury tender was proper.  Mr. Liles testified, *inter alia*, that while customary practice dictates that there is nothing necessarily wrong with tendering the check to Bay Medical Center in light of a lien, GEICO should have done more assuming the absence of a lien to resolve the issue in its entirety.  Trial Tr. at 271-72, April 8, 2015, Dkt. No. 171.  Mr. Liles also testified that, in this instance, GEICO was protecting its own interests by placing Bay Medical Center on the $10,000 tender because by not doing so GEICO would expose itself to liability for that amount from Bay Medical Center if GEICO were on notice of the lien's existence.  Trial Tr. at 222-223, April 9, 2015, Dkt. No. 172.  This testimony says nothing of GEICO's interests vis-à-vis those of Mr. Taylor, and even if the line of questioning and resulting testimony were to improperly suggest that GEICO acted in bad faith by doing so, any error in the admission of this evidence is harmless.  It is unlikely, indeed, remote, that the jury could have been swayed by this piece of evidence, which is of little probative value[5] and importance relative to the wealth of GEICO's conduct under examination and considered by the jury in this case under the totality standard.

GEICO also argues evidence was improperly excluded at trial that had a profound impact on the trial's outcome.  Specifically, GEICO asserts the Court erred by excluding 1) evidence that the property damage verdict amount awarded in the underlying action was less than that demanded by the Donnerstags, 2) testimony from Waylon Thompson that GEICO asserts contradicts the Donnerstags' testimony that they did not have an attorney prior to August 27, 2009, and 3) evidence that Mr. Taylor was charged with knowingly operating a vehicle with a suspended license.

---

[5] To the extent such evidence would bear on GEICO's interactions and relationship with the Donnerstags, information derived therefrom, and the opportunity to settle, it is of little value because the Donnerstags themselves expressly granted GEICO permission to "put Bay Medical on the check for $10,000."  *See* Pl.'s Trial Ex. 19.

GEICO's contention that the court erred in excluding evidence that the property damage verdict in the underlying litigation was less than that demanded by the Donnerstags is without merit for several reasons.  First, the accuracy of this contention is disputed by Mr. Taylor, who claims the amount awarded by the jury resulted in a net payment of $1,436.20, which Mr. Taylor asserts is exactly the amount Mr. Donnerstag requested.  Pl.'s Resp. 4, Dkt. No. 163.  In any event, any error along these lines is clearly harmless.  A separate jury's determination of the value of the subject property damage does not necessarily speak to its market value. Additionally, and perhaps more importantly, GEICO had a plethora of avenues by which to achieve the stated use of this evidence—that being, to argue GEICO's actions relating to investigating and settling the property damage claim were reasonable relative to the Donnerstags' demands and were otherwise done in good faith.  The prejudicial effect of excluding this evidence is thus so minimal that its exclusion does not result in substantial injustice to GEICO.

The same can be said of attorney Waylon Thompson ("Attorney Thompson")'s testimony at issue.  GEICO asserts that the exclusion of Attorney Thompson's deposition testimony substantially prejudiced GEICO's ability to assert that the Donnerstags were being advised by counsel throughout the material period in this case, and, therefore, defend on grounds that GEICO's efforts were thwarted by the Donnerstags, who never intended to settle.  Indeed, GEICO's closing argument at trial advanced the theory that the Donnerstags manufactured their bad faith claim.  Trial Tr. at 105, April 15, 2015, Dkt. No. 175.  At trial, however, portions of Attorney Thompson's deposition were read into the record, Trial Tr. 171-180, April 15, 2015, Dkt. No. 175, and GEICO ultimately fails in its motion to direct the Court to the portions it believes the exclusion of which prejudiced its ability to defend on the aforementioned grounds.

Moreover, while I stand by the ruling of record with regard to attorney-client privilege, any error in this regard is harmless as the jury had access to various pieces of evidence relating to both the Donnerstags' purported pre-August 27, 2009 representation and, as detailed above, their wiliness to settle their claims. *See, e.g.*, Trial Tr. 171-180, April 15, 2015, Dkt. No. 175; Trial Tr. at 118, April 7, 2015, Dkt. No. 170; Trial Tr. at 110, 117, 120-26, 250-53, April 8, 2015, Dkt. No. 171; Trial Tr. at 10-11, 48, 88-92, 211-12, April 9, 2015, Dkt. No. 172.  It is thus unlikely that the exclusion of this evidence would have materially influenced the jury.

Next, GEICO asserts that evidence of Mr. Taylor's charge for knowingly operating a vehicle with a suspended license was erroneously excluded.  Prior to trial, I granted Mr. Taylor's motion in limine on these grounds, finding the evidence to be not relevant under Federal Rules of Evidence 401-402, and, under Rule 403, that any probative value it may possess to be substantially outweighed by unfair prejudice.  Order, March 3, 2015, Dkt. No. 103.  GEICO maintains this evidence is probative of Mr. Taylor's inability to contribute financially to a settlement opportunity.  GEICO's position was, and continues to be, without merit.  To assert Mr. Taylor's purported inability to contribute to a settlement agreement follows in any way from his allegedly driving with a suspended license requires the attenuated assumption that he did so as a result of financial constraints and/or problems.  This alone is a bridge too far.  Second, even assuming Mr. Taylor was experiencing financial difficulty during the material time period, the amount placed into issue by the Donnerstags' purported settlement offer, an additional one to two thousand dollars, is small in both absolute terms as well as in comparison with Mr. Taylor's excess liability, which ran well into the hundreds of thousands of dollars.  I, therefore, decline to find harmful error in my prior ruling on this issue.

Turning next to GEICO's second category of contentions – that the jury instructions were in error – I find GEICO's assertions to be wanting.  This Court has a duty to instruct the jury and craft its verdict form in a way that accurately reflects the pertinent substantive law.  *See, e.g., McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996); *McElroy by McElroy v. Firestone Tire & Rubber Co.*, 894 F.2d 1504, 1509 (11th Cir. 1990).  The pertinent substantive law in this case is Florida bad faith law.  Where the highest court—in this case, the Florida Supreme Court—has spoken on a topic, I am bound to follow its rule, turning to intermediate state courts in the absence of its guidance unless persuasive evidence exists that the Supreme Court would rule otherwise.  *See, e.g., Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011) (emphasis added); *Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2009)(quoting *King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 157-158 (1948)).

 GEICO contends the jury was erroneously instructed that the following were affirmative defenses of which GEICO had the burden of proof: 1) whether the Donnerstags were unwilling to settle their claims against Mr. Taylor, and 2) whether GEICO was not presented with a reasonable opportunity to settle the Donnerstags' claims against Mr. Taylor.  Ct.'s Final Jury Instr. 14, Dkt. No. 132.  I find GEICO's contention to be wanting, however, in light of prevailing Florida law and the Eleventh Circuit's treatment of this issue in *Geico Gen. Ins. Co. v. McDonald*.  ("*McDonald*") 315 F. App'x 181, 183 (11th Cir. 2008).

In *McDonald*, the Eleventh Circuit upheld a jury instruction substantially similar to that with witch I instructed the jury: GEICO has the burden to show that no realistic possibility of settlement existed and any question about the possible outcome of settlement should be resolved

in favor of the plaintiff.  *See* 315 F. App'x 182-83.  The *McDonald* decision quotes *Powell v. Prudential Prop. & Cas. Ins. Co.*, which held:

> Any question about the possible outcome of a settlement effort should be resolved in favor of the insured; the insurer has the burden to show not only that there was no realistic possibility of settlement within policy limits, but also that the insured was without the ability to contribute to whatever settlement figure that the parties could have reached.

584 So.2d 12, 14 (Fla. 3rd DCA 1991).  In the absence of direct guidance from the Florida Supreme Court, either through published decision or Florida's standard jury instructions, and in light of the reasoning in *McDonald*, I am left only to conclude that *Powell* is an accurate reflection of Florida law.[6]  Because the instruction given to the jury in this case retains the essence of the instruction in *McDonald* as informed by *Powell*, the jury instructions and verdict form in this case accurately reflect Florida bath faith law.[7]

Finally, GEICO contends the verdict rendered was against the great weight of the evidence.  As noted above, I am permitted to weigh the evidence, "but to grant the motion [I]

---

[6] GEICO's resort to *Cadle v. Geico Gen. Ins. Co.* and *Batchelor v. Geico Cas. Co.* is unconvincing, as the cases do not cite Florida law for the propositions advanced and offer little analysis on the issue.  *See* No. 6:13-cv-1591-ORL-31, 2014 WL 793339, at *3 (M.D. Fla. Feb. 27, 2014); No. 6:11-CV-1071-ORL-37G, 2014 WL 7224619, at *9 (M.D. Fla. Dec. 17, 2014).  At least one other district court in Florida has declined to follow the decisions on the same grounds.  *Sowell v. Geico Cas. Ins. Co.*, No. 3:12-cv-226-MCR/EMT, 2015 WL 3843803, at *2 (N.D. Fla. June 20, 2015) ("The Court respectfully disagrees with these decisions. They include little analysis, and the Court finds instead that Snowden is more in line with Florida law.").  This being said, I continue to be troubled by the notion that under Florida law the two determinations at issue – wiliness and opportunity to settle – which essentially amount to the causal elements in the case, fall upon the insurer to prove.  It is not altogether clear how placing the burden of proof of these elements on the party *not* prosecuting the claim accords with due process.  Rather, absent the guidance of *McDonald* as informed by *Powell*, it seems only logical that the burden of establishing that Mr. Taylor's damages were caused by GEICO's determined bad faith should rest upon Mr. Taylor.

[7] GEICO appears to admit as much in GEICO's original proposed jury instructions, which list both determinations at issue as "affirmative defenses raised by GEICO."  *See* Def.'s Proposed Jury Inst. at 22, Dkt. No. 88.

must find the verdict contrary to the great, not merely the greater, weight of the evidence." *Williams*, 689 F.2d at 972. Upon review of the evidence in this case, a large portion of which is detailed at length above, I am unable to conclude that the verdict is contrary to the great weight of the evidence. Contrary to GEICO's assertions, a great portion of its contentions were, in fact, refuted or at a minimum contradicted by Mr. Taylor's case. Ultimately, the great weight of the evidence does not countervail the jury's verdict that GEICO acted in bad faith, as well as GEICO's inability to establish GEICO was not presented with a reasonable opportunity to settle the claims of the Donnerstags against Mr. Taylor and that the Donnerstags were unwilling to settle their claims. *See* Verdict Form, Dkt. No. 134.

### IV.    Conclusion

For the foregoing reasons, it is hereby

ORDERED:

Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial, and Incorporated Memorandum of Law (Dkt. No. 155) is DENIED.

**DONE AND ORDERED** at Tampa, Florida this 5th day of November, 2015.

ANTHONY E. PORCELLI
United States Magistrate Judge

Copies furnished to:
Counsel of Record